IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| LISA WAY SMITH, ) | Civil Action No. 3:10-66-HMH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for DIB and SSI on September 17, 2004, alleging disability as of September 9, 2004. Plaintiff's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held April 28, 2006, at which Plaintiff appeared and testified, the ALJ issued a decision dated February 22, 2007, denying benefits and finding that Plaintiff was not disabled because she can perform her past relevant work as a cashier.

Plaintiff then filed suit in the United States District Court on August 7, 2007. *See* Smith v. Commissioner, 3:07-02719-HMH. On December 19, 2008, the District Court reversed the decision of the ALJ and remanded the case to the Commissioner for further administrative action. A second

hearing was held before the ALJ on September 11, 2009, and the ALJ issued a decision on November 13, 2009, again finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff could perform.

Plaintiff was 47 years old at the time of the ALJ's decision. She has a sixth grade education with past relevant work as a bartender, cashier, stocker, and customer service representative. (Tr. 328). Plaintiff alleges disability as of September 9, 2004 due to borderline intellectual functioning, status post carpal tunnel release, and diabetes mellitus. (Tr. 324).

The ALJ found (Tr. 324-330):

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.  The claimant has not engaged in substantial gainful activity since September 9, 2004, the alleged onset date (20 CFR 404.1571 *et. seq.* And 416.971 *et. seq.*).

3.  The claimant has the following severe impairments: borderline intellectual functioning, status post carpal tunnel release, and diabetes mellitus (20 CFR 404.l520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[1] except no climbing or crawling or exposure to temperature extremes, occasional fingering and fine manipulation, crouching and stooping, and she is limited to simple, 1 or 2-step instructions, involving no complex reading, writing or math.

---

[1]Light work involves lifting up to 20 pounds occasionally and 10 pounds frequently and sitting, standing, and/or walking for 6 hours each in an 8-hour work day.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 9, 1962 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has a marginal education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 9, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

On November 13, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. Plaintiff then filed this action in the United States District Court on January 11, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and <u>Blalock v. Richardson</u>, <u>supra</u>.

## **MEDICAL RECORD**

Plaintiff was treated at the Franklin C. Fetter Family Health Center ("FHC") from July 2002 to September 2004. She underwent a hysterectomy for treatment of cervical cancer in 1994. Plaintiff was treated with diet and medication for non-insulin dependent diabetes mellitus beginning in July 2002. See Tr. 125-141.[2]

On September 15, 2003, Dr. Greg Moffitt examined Plaintiff at the Medical University of South Carolina ("MUSC") and noted diagnoses of subclinical hyperthyroidism, hyperparathyroidism, Type II diabetes (controlled with Metformin), and hypercholesterolemia. Tr. 209-210. On September 26, 2003, Dr. William E. Gillanders noted that Plaintiff had primary hyperparathyroidism with severe fatigue. Radiographic studies showed evidence of lower left parathyroid adenoma. Tr. 208. On October 1, 2003, Dr. Gillanders performed a parathyroidectomy in which he removed an adenoma. Tr. 204-207. On October 13, 2003, Plaintiff reported that she had done well since surgery and her energy level had improved. Dr. Gillanders recommended that Plaintiff return in twelve months. Tr. 202.

---

[2]Plaintiff's medical history though April 2006 is copied from the undersigned's December 2008 Report and Recommendation. See Tr. 364-375. In an order dated December 18, 2008, the Honorable Henry M. Herlong, Jr., United States District Judge, noted that the parties had not filed objections to the Report and Recommendation, ordered that the Commissioner's decision be reversed and remanded to the Commissioner for further administrative action as set forth in the Report and Recommendation. See Tr. 362-363. The Appeals Council remanded the case to the ALJ for "further proceedings consistent with the order of the court." Tr. 357.

In a March 2004 visit to the Endocrinology Clinic at MUSC, Plaintiff complained of waking up with palpations, diaphoresis, and left-arm pain that spontaneously resolved. Her examination was unremarkable except for mild right upper quadrant tenderness and faint-but-intact pedal pulses. Tr. 191-193.

In May 2004, Plaintiff was examined at the FHC for shooting pains in her left arm. An x-ray of her cervical spine revealed anterolisthesis of C3 on C4, and a CT scan showed early degenerative disc disease and bony spondylosis at C4-5. Tr. 128-129, 151. During May to August 2004, Plaintiff was diagnosed with probable radiculitis and degenerative disc disease. Naproxyn, Flexeril, and Celebrex were prescribed. Tr. 126-127, 129.

In August 2004, Plaintiff complained of tingling and numbness in her hands and cramps at night that prevented her from sleeping. Her examination was unremarkable except for mildly decreased sensation in her feet. Dr. Sherif Z. Yacoub-Wasef at MUSC noted that Plaintiff had endocrine problems that included suboptimally controlled type II diabetes, hyperlipidemia, hyperparathyroidism, and clinical hyperthyroidism. He noted that Plaintiff's thyroid and parathyroid function appeared to be stable, and adjusted her medications for glycemic control and hyperlipedemia. Tr. 184-186, 188.

In August 2004, Plaintiff complained to orthopaedist Dr. Don O. Stovall of pain in her left neck, arm, and hand. She reported a two-year history of numbness and tingling in both hands, weakness in her left hand, tightness in her upper back, and interrupted sleep due to left-hand pain. Celebrex, Flexeril, and Ambien had not relieved her symptoms, but she had not missed work because of her complaints. Dr. Stovall noted that Plaintiff had normal strength in both arms; good grip strength in both hands; and no edema, loss of motion, or loss of sensation in any extremity. Tr. 227-

229. EMG and nerve conduction studies revealed bilateral carpal tunnel syndrome (Tr. 123-124). Plaintiff underwent left carpal tunnel release surgery on September 30, 2004. Tr. 223-224.

In October 2004, Plaintiff was examined at MUSC. She reported that she was not exercising due to leg cramps and complained of night sweats associated with left-arm pain. Examination revealed normal gait and muscle strength; intact coordination; and no edema, joint swelling, or other abnormalities. Plaintiff's medications for diabetes and hyperlipidemia were adjusted. Tr. 180-182.

On October 18, 2004, Dr. Gillanders noted that Plaintiff had a "biochemical cure" of her parahyperthyroidism after surgery and was stable. Plaintiff complained of continued poor energy and cramping in her legs. Tr. 177-178.

In November 2004, Plaintiff reported that her carpal tunnel symptoms were better and she was happy with her progress. She complained that the symptoms in her right arm interfered with work, daily living, and sleep. Dr. Timothy G. Allen noted that Plaintiff's left upper extremity was grossly neurovascularly intact with good range of motion. He prescribed a brace and home exercises, and restricted Plaintiff to light duty work. He found signs of carpal syndrome in Plaintiff's right upper extremity, but noted that it was grossly neurovascularly intact distally and she had good range of motion and no significant atrophy. Tr. 221-22.

Plaintiff underwent an evaluation for glaucoma in December 2004. Examination revealed normal intraocular pressure and 20/20 visual acuity in both eyes. Tr. 230-231.

On January 26, 2005, Dr. F. Keels Baker reviewed Plaintiff's records and assessed her residual functional capacity ("RFC") at the request of the Commissioner. Dr. Baker opined that Plaintiff's only severe impairment was carpal tunnel syndrome and she could perform medium work that did not require more than frequent fine manipulation. Tr. 240-247, 249.

On September 12, 2005, Dr. Kwame N. Iwegbue examined Plaintiff at the request of the Commissioner. Plaintiff reported a history of neck problems, but denied any significant neck pain. She reported a history of carpal tunnel syndrome with paresthesias and numbness in her hands, and said she postponed surgery on her right hand due to a lack of improvement in symptoms in her left hand after surgery. She complained of night sweats, not associated with any diagnosis and for which she took no medication, and cramps and numbness in her legs, which she indicated was related to diabetes. Plaintiff reported that her diabetes was treated by hypoglycemic medications and her blood-sugar levels were not well controlled. She took no medications for her thyroid problems. Plaintiff's medications were aspirin, Metformin for diabetes, and Zetia for hypercholesterolemia. Dr. Iwegbue noted that Plaintiff had normal motor and sensory function, normal reflexes, normal pulses, and normal range of motion in her cervical spine. His impression was that Plaintiff had diabetes (poorly controlled by Plaintiff's history), subclinical hypothyroidism (currently not treated), night sweats (etiology undetermined), carpal tunnel syndrome (degree of impairment uncertain), and slipped disc (by history, not confirmed by CT scan, which indicated only mild degenerative disc disease). Tr. 250-252.

On September 27, 2005, Dr. Charles T. Fitts reviewed Plaintiff's medical records and assessed Plaintiff's RFC at the request of the Commissioner. He opined that Plaintiff could perform light work which did not require continuous or repetitive handling and fingering. Tr. 254-261.

On January 23, 2006, Plaintiff was examined by Dr. Hugh Durrence. She reported that she had not taken her medications for diabetes in the past year due to a lack of funds. Plaintiff had not been checking her blood-sugar levels at home. Dr. Durrence noted that Plaintiff had decreased sensation in her feet, adequate pulses, and no edema in her extremities. He prescribed Glucophage.

Tr. 275-276. On February 13, 2006, Dr. Durrence increased Plaintiff's dosage of Glucophage, as her blood-sugar levels had been high (ranging from 153-286). Tr. 273. Dr. Durrence continued to examine and adjust Plaintiff's diabetic medications through April 24, 2006. Tr. 262-272.

After this action was remanded to the ALJ, Plaintiff underwent a psychological consultative examination with Dr. Francis J. Fishburne, a psychologist. Plaintiff reported that she completed school up to the sixth grade and had never obtained a GED. She said she had worked as a bartender and delivery truck driver, but stopped working because she could no longer lift heavy items and was fatigued all the time. Plaintiff reported that she began drinking alcohol at age 12 and drank heavily until she quit in 1991. She complained of neck and back problems, diabetes, elevated cholesterol, and thyroid problems. Tr. 407. Plaintiff indicated that she spent her days doing household chores, "hanging out" with her teenaged daughter (who she had on the weekends), and resting. She said she could not lift heavy weight or drive long distances, but could drive a car, care for herself independently, do her own shopping, cook, and houseclean. Plaintiff reported feeling depressed once a week and said she did not like being in crowds, but denied any problems getting along with others. Plaintiff said she had problems understanding what she read, but thought she had a good memory. Tr. 408.

Dr. Fishburne administered the Wechsler Adult Intelligence Scale test on which Plaintiff scored 61 in Verbal Comprehension, 65 in Perceptual Reasoning, 63 in Working Memory, and 68 in Processing Speed. She achieved a Full Scale IQ of 58, placing her in the mentally retarded range of intellectual functioning. Tr. 408. Her academic achievement levels ranged from 3rd to 4th grade, which Dr. Fishburne noted was in the mild impaired to borderline range of abilities. Dr. Fishburne diagnosed Plaintiff with alcohol dependence - in remission, mild mental retardation, and a GAF of

50 (serious symptoms). Tr. 410. Dr. Fishburne completed a medical source statement of ability to do work-related activities, indicating that Plaintiff had moderate limitations in her ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions. Tr. 412. He concluded that Plaintiff had no limitations in interacting with others. Tr. 413.

## **HEARING TESTIMONY**

At the first hearing (April 2006), Plaintiff indicated that she stopped working in 2004 because she was laid off when she told her employer that she was going to have carpel tunnel surgery. Tr. 298-299. She testified that she did not try to go back to work because she had constant pain in her arms, cramps in her legs, and difficulty sleeping. Tr. 300. She testified that she had trouble controlling her blood-sugar level despite medication, which caused her to experience constant thirst, urinary incontinence, constant pain in her hands and feet, blurred vision, and numbness in her hands. Tr. 302. She stated that she had difficulty cleaning because of fatigue and cramps in her hands and legs. Tr. 303-304.

Plaintiff's ex-husband testified that Plaintiff had not worked since 2004 because of diabetes, problems with discs in her neck, pain in her arms and legs at night, and hot flashes. Tr. 313. He testified that Plaintiff could read and write, but was unsure whether she understood what she read. Tr. 314-315. He said she was affected by childhood traumas and that he had encouraged her to obtain psychiatric treatment.

At the September 2009 hearing, Plaintiff testified that she continued having difficulty using her hands. Tr. 418-419. She said she also had right arm swelling, neck pain, leg pain, and an

9

overactive thyroid. Tr. 419-421. Plaintiff's ex-husband reiterated his prior testimony and said that he now had sole custody of their daughter. Tr. 424-428.

## **ISSUES**

Plaintiff alleges that: (1) the ALJ erroneously concluded that her condition did not meet or equal the listings of impairments ("Listings"), 20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 12.05; (2) the ALJ failed to properly consider the combined effect of her multiple impairments; and (3) the Commissioner failed to meet its burden at step five of the sequential evaluation process. The Commissioner contends that the final decision that Plaintiff was not disabled within the meaning of the Social Security Act was supported by substantial evidence[3] and free of legal error.

## **DISCUSSION**

Plaintiff contends that she met or equaled the Listing at § 12.05B and C as she had a valid IQ score of 58 and suffered from physical impairments (diabetes mellitus, carpal tunnel syndrome, degenerative disc disease and hyperthyroidism) which imposed additional and significant work-related limitation of function. The Commissioner argues that Plaintiff did not meet or equal this listing because she has not shown that her subaverage intellectual functioning was accompanied by deficits in adaptive functioning during the developmental period (before age 22). In her Reply Brief, Plaintiff argues that she met this requirement based on Slosson Intelligence Test ("SIT") results from

---

[3]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

10

November 17, 1975 which indicated that her IQ was 62 when she was 13 years old. The oral reading portion of the SIT indicated that although Plaintiff was in seventh grade at the time, she was reading at only a third grade level.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the claimant have the diagnosis of a listed impairment; the claimant must also have a medically determinable impairment that satisfies all of the criteria in the listing. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant has to establish that there was a "twelve-month period...during which all of the criteria in the Listing of Impairments [were] met." DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds). An ALJ's failure to explicitly refer to a Listing by name does not, by itself, require remand, provided that the ALJ's decision is sufficient to permit the reviewing court to trace the ALJ's reasoning. See Rice v. Barnhart, 384 F.3d 363, 369-370 (7th Cir. 2004).

The Listings at 12.05B require that the plaintiff show evidence of "[a] valid verbal, performance, or full scale IQ of 59 or less."   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The Listings at § 12.05C require that the plaintiff show evidence of:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

Id.  The additional impairment under § 12.05C need not of itself be disabling, since that would make the requirement meaningless.  Branham v. Hecker, 775 F.2d 1271, 1273 (4th Cir. 1985).  Section 12.05 further provides:

> Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.   The Fourth Circuit has held that § 12.00 "expressly define[s] mental retardation as 'a lifelong condition.'" Branham v. Heckler, 775 F.2d at 1274.

The ALJ's determination that Plaintiff did not meet or equal the Listing at 12.05 is not supported by substantial evidence.  The ALJ appears to have accepted Plaintiff had a valid Full Scale IQ score of 58 (which meets part of the requirements of both 12.05B and 12.05C).  Plaintiff has shown that she has physical impairments imposing additional and significant work-related limitation of function.   She also has presented evidence that she had significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested before age 22. Specifically, Plaintiff has presented SIT scores[4] indicating an IQ of 62 when Plaintiff was 13 years old.  The oral reading portion of the SIT indicated that Plaintiff was reading at a third grade level

---

[4]Although the SIT may not be a conclusive IQ test, the ALJ failed to address these scores in his September 2009 decision.

when she was in the seventh grade. She did not complete the seventh grade. Plaintiff also submitted school records indicating that she was working below grade level. Tr. 100. As acknowledged by the ALJ, Plaintiff has a marginal school education. See Tr. 325. Plaintiff also appears to have a sporadic work history with frequent job changes.

In his decision, the ALJ stated that he found no evidence to show that Plaintiff had significant limits during the developmental period. He based this on what he termed Plaintiff's "good work history prior to the alleged onset of disability, including jobs which may have been semi-skilled with a work history as a cashier, bartender, customer service representative, and delivery truck driver." Tr. 325. He also appears to support this with Dr. Fishburne's observations that Plaintiff was alert and oriented; was cooperative; her mood was appropriate; she had no evidence of delusions, hallucinations, or paranoid thinking; and she related her vocational medical history without difficulty. The ALJ also found that Plaintiff's activities of daily living including that she drove to the interview, lived independently, shopped, prepared meals, and had parental responsibility for her daughter on weekends, showed a lack of significant deficits in adaptive behavior. Id.

The ALJ's determination that Plaintiff did not have significant limits during the adaptive period is not supported by substantial evidence. There is no indication in the decision that the ALJ considered the evidence presented by Plaintiff that she had an IQ of 62 at age thirteen and was working well below grade level. The ALJ found that Plaintiff did not have deficits in adaptive behavior based, in part, on Dr. Fishburne's observations. Dr. Fishburne, however, diagnosed Plaintiff with mild mental retardation and found that she would require assistance of a responsible adult to manage any awarded benefits because of her low level of intellectual functioning. Tr. 410-411.

The ALJ also found that Plaintiff did not have deficits in adaptive functioning because she has a what he termed a "good work history" which "may have been semi-skilled." Tr. 325. The Fourth Circuit has indicated the mere existence of a work history cannot be used to determine if an impairment is disabling when the impairment is already presumptively disabling under a listing. See Luckey v. U. S. Dep't of Health & Human Servs., 890 F.2d 666, 669 (4th Cir. 1989). Here, the ALJ did not question Plaintiff in any depth at the hearings about her work history and did not discuss her work history in his opinion other than to state that it may have been semi-skilled.

Although Plaintiff lived independently, her ex-husband testified that he sees her three to four times a week and helps her. Tr. 424-425. He also testified that he had sole custody of their child because Plaintiff was not able to take on the responsibilities of raising a child especially as to the child's education. Tr. 424, 427. That Plaintiff began drinking alcohol at age 12 does not appear to provide any support to a finding that Plaintiff did not have deficits in adaptive behavior prior to age 22.

In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id. As the undersigned recommends that Plaintiff be found disabled at step three of the sequential evaluation process, it is not necessary to address Plaintiff's remaining arguments.

**CONCLUSION**

Reversal is appropriate when "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standing and when reopening the record for more evidence would serve no purpose. " Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974). In such a case, an adverse decision on remand could not "withstand judicial review," therefore, reversal is appropriate without the additional step of directing that the case be remanded to the Commissioner. See also Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987). It is, therefore,

RECOMMENDED that the Commissioner's decision to deny benefits be **reversed** and this action be **remanded** to the Commissioner for an award of benefits.

Joseph R. McCrorey
United States Magistrate Judge

January 24, 2011
Columbia, South Carolina